Dear Mr. Fussell:
We are in receipt of your request on behalf of the Louisiana Lottery Corporation (LLC), dated November 1, 1994, for an opinion from this office as to whether;
 ". . . the proposed PowerBall/Multi-State Lottery Association on-line game, contract and Multi-State Lottery Association rules are inconsistent with, violate, or are consistent with provisions of the Louisiana Lottery Corporation Law, Louisiana Lottery Corporation articles of incorporation, bylaws or administrative rules."
In connection with your request, we have reviewed the following documents of the Multi-State Lottery Association (MUSL) as amended through December 31, 1993:
1) Multi-State Lottery Agreement
 2) Multi-State Lottery Association Rules (including PowerBall Game Rules)
 3) Multi-State Lottery Association Policies and Procedures Manual
4) Multi-State Lottery Association Constitution and Bylaws
The rules and procedures of MUSL were compared to the following statutes and documents governing the LLC:
1) Article 12 § 6 of the Louisiana Constitution of 1974
 2) Title 47 of the Louisiana Revised Statutes (Louisiana Lottery Corporation Law)
3) LLC Articles of Incorporation recorded May 30, 1991
4) LLC Bylaws as amended May 14, 1991
 5) LLC Administrative Rules as amended through October 21, 1994
I. LOUISIANA CONSTITUTION OF 1974
Article 12 Section 6 of the Louisiana Constitution of 1974 gave the legislature the power to create a special corporation to operate a state lottery. This was done by Acts 1990, No. 1045. There is nothing contained in the MUSL Agreement, Rules, Policies and Procedures or Constitution and Bylaws which is inconsistent with the provisions of the Louisiana Constitution of 1974.
II. TITLE 47 OF THE LOUISIANA REVISED STATUTES
(Louisiana Lottery Corporation Law)
The Louisiana Lottery Corporation Law provides in R.S. 47:9009:
 A. The Corporation shall conduct and administer lottery games which will result in maximization of revenues to the state of Louisiana. The corporation, its employees, and the members of the board shall provide for the effective operations of lottery games which insure the integrity of the lottery and maintain the dignity of the state and the general welfare of its citizens. The corporation, in pursuance of the attainment of the objectives and the purposes of this Chapter, may:
. . .
 (5) Enter into written agreements with one or more other states or sovereigns for the operation, marketing, and promotion of a joint lottery or joint lottery games.
The statute provides for possible entry into a multi-state lottery agreement. The Board of Directors of the LLC by amendment to its On-Line Lottery Games General Rules dated October 21, 1994 authorized the corporation to enter into an agreement with the Multi-State Lottery Association to offer the game of "PowerBall".
The Louisiana Lottery Corporation is authorized to adopt rules for the conduct of specific lottery games pursuant to R.S.47:9008. The statute provides in pertinent part:
 The board may adopt rules for the conduct of specific lottery games and operations, including but not limited to rules specifying:
 1) The types of games to be conducted, including but not limited to instant lotteries, on-line games, and other games traditional to the lottery.
2) The sale price of tickets.
3) The number and amount of prizes.
 4) The method and location of selecting or validating winning tickets.
 5) The frequency and the means of conducting drawings which shall be open to the public.
6) The manner of payment of prizes.
7) The frequency of games and drawings.
 8) The manner and amount of compensation to lottery retailers, except all compensation shall be uniform.
 9) Any other matters necessary or desirable for the efficient and effective operation of the lottery or for the convenience of the public.
The grant of authority in R.S. 47:9008 gives the LLC much discretion in the promulgation of game rules. The legislature has provided specific statutory direction concerning lottery games in R.S. 47:9020, which prohibits the bulk sale and purchase of lottery tickets, R.S. 47:9025 which concerns prize payments and taxes and eligibility to purchase tickets and R.S. 47:9029 which concerns of the investment of LLC funds. The MUSL Agreement, Rules, Policies and Procedures and Constitution and Bylaws, are not inconsistent with the provisions of Title 47 except as noted in section V below.
III. LLC ARTICLES OF INCORPORATION AND BYLAWS
There is nothing contained in the MUSL Agreement, Rules, Policies and Procedures or Constitution and Bylaws which is inconsistent with the provisions of the LLC Articles of Incorporation or Bylaws.
IV. LLC ADMINISTRATIVE RULES
An examination was conducted of the following LLC Rules:
1) Rules of Conduct
2) Retailer Regulations
3) Personnel Policies
4) Instant Lottery Games
5) Special Rules and Regulations on Payment of Prizes
6) Procurement Policies and Rules
7) Continuous Internal Auditing System Policies and Rules
8) Motor Vehicle Policies and Rules
9) On-Line Games General Rules
There is nothing contained in the MUSL Agreement, Rules, Policies and Procedures, or Constitution and ByLaws which is inconsistent with the provisions of the LLC Administrative Rules.
V. PROVISIONS OF MUSL RULES AND PROCEDURES INCONSISTENT WITH LOUISIANA LAW
The grand prize of the PowerBall game is paid as an annuity over a period of twenty years. This is consistent with the rules of the LLC. However, Rule 20 of MUSL provides in pertinent part:
 The MUSL shall act as agent for the party lotteries and purchase annuities for the benefit of the party lotteries who receive valid claims for each prize paid as an annuity. The annuity purchase process shall be handled by the MUSL (solicitation of bids, selection of annuity, premium payment, etc.). The annuities so purchased shall be held in the trust account for the benefit of each party lottery for eventual distribution to a prize winner.
In its Policies and Procedures Manual at page 40, MUSL has adopted the following policy concerning security transactions.
 Securities in the custody of MUSL and member lotteries may be traded, upon authorization by the MUSL office, for other securities backed by the full faith and credit of the U.S. Government, securities issued by the Resolution Funding Corporation to provide financing for the Resolution Trust Corporation or Government Trust Certificates as issued by the Defense Security Assistance Agency of the Department of Defense provided that the transaction results in a profit and that the purchased securities will mature in such a fashion that MUSL prizes can be paid on their original schedule. (emphasis added)
In Louisiana, prize payments are governed by the provisions of R.S. 47:9029A(2) (d) and (e) which state:
 (d) For the purpose of payment of deferred prizes to winners, the corporation may only purchase those securities that are direct obligations of the United States Treasury in a manner prescribed by R.S. 49:327(B)(1)(a).
 (e) For the purpose of deferred prize payments to winners, the corporation shall purchase or invest in only those securities that are direct obligations of the United States Treasury.
It is our opinion that the securities highlighted above, that issecurities issued by the Resolution FundingCorporation to provide financing for the ResolutionTrust Corporation or Government Trust Certificates as issuedby the Defense Security Assistance Agency of theDepartment of Defense are not allowed under Louisiana law. They are not direct obligations of the United States Treasury. Consequently, purchase by MUSL of the listed securities would be a violation of R.S. 47:9029.
Additionally, it should be noted that the Rules and Policies and Procedures of MUSL can be changed by the MUSL Board of Directors upon proper notice. (Section 2 and Section 11 MUSL Agreement, MUSL Rule 17). Consequently, it is possible that changes could be made that would be contrary to Louisiana law. Section 17 of the MUSL Agreement provides for this contingency as follows;
 A party lottery wishing to withdraw from this agreement shall give the (MUSL) BOARD a six (6) months notice of its intention to withdraw. However, a lottery may terminate such agreement at anytime without prior notice if authority to participate is withdrawn by executive or legislative action or if participation in the MUSL is in conflict with the constitution or statutes of any state.
Consequently, if MUSL were to change its rules in such a manner as to conflict with Louisiana law, the LLC could terminate its participation in MUSL at anytime without prior notice.
Conclusion
Based upon an examination of the documents and statutes listed above, it is our opinion that the MUSL Agreement, Rules, Policy and Procedures Manual, and Constitution and Bylaws do not conflict with Louisiana laws governing the LLC, except to the extent that the MUSL policy concerning purchases of securities allows for purchases which would be a violation of R.S.47:9029A(2)(d) and (e).
Sincerely,
 RICHARD P. IEYOUB Attorney General
 BY: __________________________________ STEPHEN J. LEDET Assistant Attorney General
RPI:SJL:lmb